RATTET, PASTERNAK & GORDON-OLIVER, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Jonathan S. Pasternak
Dawn K. Arnold, Esq.
Jared A. Ullman, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In re:                                             Chapter 11
                                                   Case No. 10-14864 (MG)
OMC, INC.

                            Debtor.
---------------------------------------------------------------X

**DEBTOR'S MOTION FOR AN ORDER (I) SCHEDULING
A PRELIMINARY HEARING ON DEBTOR'S MOTION REQUESTING
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2) AND
BANKRUPTCY RULE 4001, (II) AUTHORIZING THE DEBTOR'S USE
OF CASH COLLATERAL ON AN INTERIM BASIS AND PROVIDING
ADEQUATE PROTECTION THEREFORE PURSUANT TO 11 U.S.C.
§§361 AND 362, AND (III) SCHEDULING A FINAL HEARING**

OMC, Inc., the above captioned debtor and debtor-in-possession (the "Debtor"), by its attorneys, Rattet, Pasternak & Gordon-Oliver, LLP, files this motion (the "Motion") for entry of an Order Scheduling a Preliminary Hearing on the Debtor's Motion Requesting the Use of Cash Collateral, (II) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. §363 and Providing Adequate Protection Therefor Pursuant to 11 U.S.C. §§361 and 362 and (III) Scheduling a Final Hearing, respectfully state and represent as follows:

1

### Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### Background

3. On September 15, 2010, (the "<u>Filing Date</u>"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed.

4. Since 1986, the Debtor has been and continues to be a leading provider of subcontracting services in the commercial heating ventilation and air conditioning ("HVAC") industry. The Debtor provides several HVAC services for its general contractors, including drafting, fabrication and installation of sheet metal ductwork for commercial buildings. The Debtor principally operates in the New York Metropolitan area, and is located at 4010 Park Avenue, Bronx, New York 10457.

5. The Debtor grew substantially from its inception up until about 2007, when the Debtor like many other companies dependent on a robust construction industry realized a substantial decrease in business. The Debtor's revenues have decreased from approximately $25,000,000 in 2007 to $13,000,000 in 2009.

6. Although the Debtor has been struggling to maintain profitability while weathering the severely difficult economic climate, it has made very substantial efforts to lower its overhead by cutting costs, including a portion of its workforce. These cost cutting efforts have enabled the Debtor to minimize its losses, and position itself to thrive as the economy rebounds.

7. The Debtor intends to utilize the bankruptcy process in order to restructure and reorganize its affairs. To the extent possible, alleviating a large portion of the Debtor's liabilities through chapter 11 would give it the fresh start it needs to thrive in a less robust economy.

8. The Debtor further believes that the bankruptcy process will give it breathing room from its creditors so that focus can be placed on increasing sales and with the help of counsel, restructuring its affairs so as to propose a plan of reorganization that it is in the best interests of its creditors and affords them the greatest recovery possible.

## The Merrill Lynch Pre-Petition Secured Debt

9. On or about July 19, 2000, the Debtor entered into a Loan and Security Agreement, as supplemented, modified, renewed, extended and/or amended from time to time and most recently on April 5, 2010 (collectively, the "Loan Documents") with Merrill Lynch Commercial Finance Corp. ("MLCFC") in which MLCFC extended credit to the Debtor in the total current approximate outstanding amount of $649,028.67 at a rate equal to 6.2% plus the One-Month LIBOR and currently provides for monthly amortized payments of $52,000 per month. The current extended maturity date of the loan is April 30, 2011. Copies of the Loan Documents are annexed hereto as Exhibit "A".

10. The Loan Documents provide, *inter alia,* that M&T shall be granted a security interest in, a lien on and a pledge and assignment of all of the Debtor's personal property. The collateral is defined as

> "all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Customer, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and all insurance proceeds), and the additional collateral described in Section 3.6(b) of the Loan and Security Agreement." (the "Collateral") [1]

The grant of security by the Debtor to MLCFC pursuant to the MLCFC Loan and Security Agreement was perfected by the filing of a series of UCC-1 financing statement with the New York Secretary of State, which filings have been continued and have not lapsed. A copy of the MLCFC Loan and Security Agreement and all amendments thereto are annexed hereto as Exhibit "A" and the UCC-1 financing statements are annexed hereto as Exhibit "B". (The Loan and Security Agreement and UCC-1 financing statement are collectively referred to herein as the "MLCFC Loan Documents").

11. As of the Petition Date, the Debtor is indebted to MLCFC in the approximate amount of $649,028.67 plus applicable interest and attorneys' fees.

**Relief Requested**

12. The Debtor submits this Motion pursuant to Bankruptcy Code §363(c)(2)(B) and 361 and 362 and Bankruptcy Rule 4001(b) with respect to the Debtor's request for authority to use property which may constitute Collateral in which MLCFC is likely to assert a security interest, substantially in accordance with the terms and conditions set forth in the proposed

---

[1] MLCFC was also granted additional collateral and security interests for the subject loan in the form of a second priority mortgage on the Debtor's real property located at 4010 Park Avenue, Bronx, New York 10457.

Interim Order (the "Order") annexed hereto as Exhibit "C". The Debtor believes that MLCFC is the only party that may have a perfected security interest in the Debtor's property which may constitute Collateral.

13. The proposed Order grants the Debtor the authority to use the Collateral pursuant to Bankruptcy Code §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent necessary to continue the operation of its business and to preserve the value of its estate during the course of the Chapter 11 case.

14. Section 363(a) of the Bankruptcy Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

15. Section 363(c)(1) of the Bankruptcy Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

16. Section 363(d) of the Bankruptcy Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

17. Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code, the consent of the Secured Creditors or authority from this Court is required to use Collateral in which they hold perfected security interests.

**Adequate Protection**

18.     The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982). See also, In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

19.     Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

20.     The Order provides that, as adequate protection for the Debtor's use of the MLCFC's Collateral and in consideration for the use of the Collateral, the Debtor shall grant the MLCFC replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds, including the Collateral and the proceeds of the foregoing, to the extent that MLCFC had valid security interests in said pre-petition assets on the Filing Date and in the continuing order of priority that existed as of the Filing Date (the "Replacement Liens").

21. The Replacement Liens shall be subject and subordinate only to: (a) United States Trustee fees payable under 28 U.S.C. Section 1930 and 31 U.S.C Section 3717; (b) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Code or pursuant to any monthly fee order entered in the Debtor's Chapter 11 case; (c) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000; and (d) the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 ("Avoidance Actions") of the Bankruptcy Code (collectively, the "Carve-Outs").

22. The Debtor submits that, in order to preserve the Debtor's estate and ensure the viability of the Debtor during the Chapter 11 case, MLCFC should be granted Replacement Liens with the same nature, extent and validity of their pre-petition liens, subject to investigation by any creditors or committee appointed in the Debtor's Chapter 11 case.

23. In addition to the liens and security interests proposed to be granted pursuant hereto, the Debtor shall make, no later than the tenth (10th) day of each month covered hereunder, monthly interest only payments to MLCFC at the contract rate of interest set forth in the MLCFC Loan Documents, as most recently amended, in the approximate amount of $5,200 per month.

**The Budget**

24. The Debtor proposes to use Collateral only for ordinary and necessary operating expenses o substantially in accordance with the weekly operating budgets annexed hereto as Exhibit "D" (the "Budget"). The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for the period set forth in the Budget. The Debtor believes that the use of

7

Collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

### **LEGAL BASIS FOR RELIEF REQUESTED**

25. Typically, a motion for authority to use cash collateral may commence no earlier than 14 days after service of the motion pursuant to Bankruptcy Rule 4001(b)(2). However, that same rule provides that the court may conduct a preliminary hearing before such 14 day period expires under certain circumstances.

26. Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

(c) *Reduction.*

    (1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

    (2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

27. Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear an application such as the Application herein on shortened notice, for cause shown.

28. The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Application and refers the Court to the Affirmation of Jonathan S. Pasternak, Esq. Pursuant to Local Bankruptcy Rule 9077-1(a) in support of an order scheduling hearing on shortened notice, submitted herewith.

**Request For Waiver Of Stay**

29. The Debtor further seeks a waiver of the stay of the effectiveness of the Order that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of Collateral is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

**Notice**

30. This Motion is being served on notice to the Secured Creditors and all other parties asserting secured claims against the Debtor, as well as the United States Trustee and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), including but not limited to the Debtor's twenty (20) largest unsecured creditors.

**WHEREFORE**, the Debtor respectfully requests use of cash collateral in accordance with the terms of the annexed proposed Order and this Application, together with such other and further relief as is just and proper under the circumstances.

Dated: Harrison, New York
September 16, 2010

    Respectfully submitted,

    RATTET, PASTERNAK & GORDON-OLIVER, LLP
    Proposed Attorneys for the Debtor
    550 Mamaroneck Avenue
    Harrison, New York 10528
    (914) 381-7400

    By: */s/Jonathan S. Pasternak*
        Jonathan S. Pasternak