UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

In re:

|  |  |
|---|---|
| OMC, INC., | Chapter 11<br>Case No. 10-14864 (MG) |

Debtor.

------------------------------------------------------------------------X

OMC, INC.,

Plaintiff,

v.

|  |  |
|---|---|
| LOCAL UNION 28 OF THE SHEET METAL WORKERS'<br>INTERNATIONAL UNION, SHEET METAL WORKERS'<br>INTERNATIONAL UNION, AFL-CIO, SHEET METAL<br>WORKERS' NATIONAL PENSION FUND, and RALPH<br>TORORA | Adv. Pro. No. |

Defendants.

------------------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, OMC, Inc. (hereinafter, "OMC", "Plaintiff" or "Debtor"), by its attorneys, Rattet, Pasternak & Gordon Oliver, LLP, as and for its Verified Complaint pursuant to Fed.R.Civ.P. Rule 65, made applicable hereto by Fed. R. Bankr. P. Rule 7065 against defendants Local Union 28 of the Sheet Metal Workers' International Union (the "Local" or the "Union"), Sheet Metal Workers' International Union, AFL-CIO (the "International"), the Sheet Metal Workers' National Pension Fund ("NPF"), and Ralph Torora ("Torora") respectfully alleges as follows:

## JURISDICTION

1.    On September 15, 2010, (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The Debtor has continued in possession of its property and the management of its business affairs as debtors-in-possession pursuant to

§§1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or statutory committee has been appointed.

2.   This adversary proceeding is commenced under §105(a) of title 11 of the United States Code, 11 U.S.C. §100 et seq and Federal Rules of Bankruptcy Procedure 7001(1) et seq.

3.   The jurisdiction of this Court is premised upon §157(b) and 1334(b) of title 28 of the United States Code, 28 U.S.C. §1 et seq and the General Referral Order of the Court dated July 10, 1984.

4.   This is a core proceeding pursuant to subsections (A)(E) and (O) of § 157(b)(2) of the Judicial Code.

5.   Venue is proper in this district pursuant to §1409 of the Judicial Code because this is an action arising in or arising under a case under title 11 of the Code.

## BACKGROUND

6.   OMC is a corporation organized and existing pursuant to the laws of the State of New York.

7.   Since 1986, the Debtor has been and continues to be a provider of subcontracting services in the commercial heating ventilation and air conditioning ("HVAC") industry.

8.   The Debtor provides several HVAC services for its general contractors, including drafting, fabrication and installation of sheet metal ductwork for commercial buildings.

9.   The Debtor principally operates in the New York Metropolitan area, and is located at 4010 Park Avenue, Bronx, New York 10457.

10.  At all times hereafter mentioned, OCM's employees were members of the Local.

11. At various times, on and after 1986, Collective Bargaining Agreements ("CBAs") were in effect between Union and OMC.  A CBA was in force on the Filing Date.

12. In the various CBA's, it was provided, inter alia, that in consideration for the services to be performed for OMC by its Union employees, OMC would pay, on their respective behalves, certain stipulated compensation, including wages and pension benefits. In the past OMC made one payment to the Union, which forwarded the relevant portion to the NFP.

13. In furtherance of its business, OMC has, over the years, employed a substantial number of workers, mechanics and apprentices who are skilled, trained and qualified in HVAC work, and paid benefits on their respective behalves as required by the CBA.

14. Prior to the Filing Date, OMC fell behind in its obligations to the NPF.

15. On and after the Filing Date, OMC was precluded, by the applicable provisions of the Code, from paying pre-petition obligations to the NPF.

16. On September 13, 2010 NPF sent out two notices, one addressed to OMC, a copy of which is annexed hereto as Exhibit "1", and one addressed to all Local 28 employees, a copy of which is annexed hereto as Exhibit "2", purporting to terminate credits for pension benefits ("Pension Credits") as of October 1, 2010.

17. On September 29, 2010, Ralph Tortora, a business agent for the Bronx territory for Local 28 appeared at the Debtor's business premises and handed out a written notice (the "Notice") to each of the Debtor's employees, informing them that by reason of the Debtor's delinquency in timely paying contributions, they would no longer receive credits for pension benefits ("Pension Credits") after October 1, 2010. A copy of the Notice is annexed hereto as **Exhibit "3"**. (Exhibits "1", "2" and "3" collectively, where appropriate, being defined as the "Notices").

18. The Notice sent to OMC's employees by Local 28 ignored the bankruptcy filing and the effect that such filing had on (a) unpaid pre-petition obligations, (b) post-petition obligations,

and (c) the contractual rights between OMC, its employees, and the above-named Defendants. In contravention of Section 362(a) of the Code, the employees were, upon information and belief, later advised that unless pre-petition arrearages were paid Pension Credits could not be restored.

19. Upon information and belief, NPF and Local 28 knew, or should have known, the devastating effect such notice would have on OMC, its business and its relationship with its employees.

20. On October 4, 2010 Defendant NPF was appointed to serve on the Official Committee of Unsecured Creditors (the "Committee").

21. Upon information and belief, as a direct result of the Notice, employees Matt Moran and Gene Papejoi quit their employment at OMC (the "Resignations").

22. Immediately upon being notified of the Resignations, OMC's counsel forwarded a letter dated September 30, 2010 (the "September 30, 2010 Letter ") to Jeff Dubin, Esq., counsel for NPF advising both him and Local 28 of the impact of the automatic stay and case authority relating to same. A copy of the September 30, 2010 Letter is annexed hereto as Exhibit "4".

23. By electronic mail transmission ("E-Mail") dated September 30, 2010 from Mr. Dubin to OMC's counsel, a copy of which is annexed hereto as Exhibit "5" (the "Dubin September 30, 2010 E-Mail"), Mr. Dubin acknowledged, on behalf of Defendants, receipt of the September 30, 2010 Letter (Exhibit "4").

24. In the Dubin September 30, 2010 E-Mail, Mr. Dubin stated:

25. the employees who continue to work for those terminated employers stop earning pension credit because it is no longer Covered Employment,

26. the employer ceases to have an obligation to contribute to the Plan after the effective date of the termination.

27. Thus, in the Dubin September 30, 2010 E-Mail, Mr. Dubin admitted that OMC's employees would stop earning pension credit.

28. In the Dubin September 30, 2010 E-Mail, Mr. Dubin stated that the termination "operates to prevent the accumulation of future contribution obligations….(and) effects whether the employees receive future pension credit from the NPF".

29. By e-mail dated October 5, 2010 OMC's counsel sent Mr. Dubin a proposal, by e-mail (the "RPGO October 5, 2010 E-Mail), a copy of which is annexed hereto as Exhibit "6") wherein counsel asserted the automatic stay and stated that OMC, Inc. would be willing to agree to a "standstill" type of arrangement with NPF, in lieu of commencement of such litigation, as follows:

> 1) OMC will make weekly remittance of post-petition NPF obligations, commencing retroactively to September 15th, the Chapter 11 commencement date, and will continue to make such weekly remittances on a timely basis during the pendency of the Chapter 11 case. Procedurally, OMC will therefore require access to weekly remittance reports from NPF (as opposed to the currently monthly reporting). I understand the contact for such reports is John Holback at NPF. His direct telephone number is 800-231-4622 ext. 7008.
>
> 2) NPF will immediately rescind the termination of OMC's participation, retroactive to September 15, 2010, and will cause the delivery of a letter to both OMC and Local 28 to such effect.
>
> 3) NPF will take no further action during the course of the Chapter 11 case to terminate OMC's participation in NPF strictly provided that OMC remains 100% current in all weekly post-petition remittance of NPF contributions.
>
> 4) Both parties reserve any and all rights with respect to their respective positions of the authority or validity of the termination by NPF and any and all claims related thereto, including but not limited to the pre-petition claims of NPF in the Chapter 11 case.
>
> 5) In the event that OMC defaults on any of its post-petition NPF contribution obligations, NPF shall have the right to terminate this standstill agreement upon five (5) business days' notice to the undersigned counsel.

30.

31. The impact of maintaining current payments by the Debtor to NPF would be to prevent the "accumulation of future contribution obligations" as NPF, through its counsel assert concern them.

32. Counsel to OMC attempted repeatedly to obtain a response to the RPGO October 5, 2010 e-mail (Exhibit "6"). Mr. Dubin responded, by e-mail, on October 6, 2010 at 2:26 p.m. stating: "I just got in after a rather tough day in the EDNY. I just looked at the proposal. My suggestion this morning was to send me a proposal that I could take to my client. Instead, I get threats. My polite response to threats is 'go do whatever you like'." A copy of this e-mail is annexed hereto as Exhibit "7".

33. By e-mail dated October 6, 2010 at 2:57 counsel for OMC stated to Mr. Dubin: "I think there is a miscommunication. We meant to be productive and helpful to you in drafting something you can present to your client. I just tried to give you a call to clear this up. Please give me a call back, I'm sure we can resolve this very easily. As sometimes happens, email can be read one way when intended an entirely different way. There was no intent to be offensive, I assure you. I look forward to speaking with you". A copy of this e-mail is annexed hereto as Exhibit "8".

34. By e-mail dated October 6, 2010 at 19:31:56, or 5:31 p.m. Mr. Dubin stated "Dear Mr. Pasternak, I have sent your "stand still" proposal to the Fund Office. Since Termination is a Trustee directed policy, the Trustees must be contacted. This takes time. I'll let you know when I have useful information". A copy of this e-mail is annexed hereto as Exhibit "9".

35. Mr. Pasternak replied, by e-mail dated October 6, 2010 by e-mail at 9:43 p.m. "Unfortunately, we don't have much time to resolve this. My client has just lost 2 jobs totaling $2 million over concerns of his ability to adequately man jobs. I strongly urge your client to give us

a response by tomorrow. Thank you". A copy of this e-mail is annexed hereto as Exhibit "10".

36. By e-mail sent on October 7, 2010 at 7:10 a.m. Mr. Dubin stated: "In that case I suggest that you spend the weekend drafting your frivolous adversary proceeding. You were given an opportunity to demonstrate that our position was incorrect. Instead, you demonstrated that you will take a position that is based on nothing other than the needs of your client". A copy of this e-mail is annexed hereto as Exhibit "11".

37. On October 7, 2010 Plaintiff sought to make current post-petition payments towards NPF by logging onto NPF's "Internet Payment System" (the "NPF Internet Payment System").

38. Plaintiff found that its "Employer Number" had been terminated and thus Plaintiff could not use the NPF Internet Payment System to make or maintain payments.

39. Plaintiff at all times is ready, willing and able to make post-petition payments to NPF.

40. In violation of the automatic stay and in continued disregard of the September 30, 2010 Letter (Exhibit "4") Defendants are refusing to commit to restoring Pension Credits.

41. OMC has offered to pay in full all post-petition obligations due the Defendants, provided that it could be assured by Defendants that upon making such payments, Pension Credits would be restored. Defendants, however, refused to give such assurance.

## FIRST CLAIM FOR RELIEF AGAINST NPF
## FOR VIOLATION OF THE AUTOMATIC STAY

42.      Debtor repeats and realleges each allegation set forth in Paragraphs "1" through "38" with the same effect as if herein fully set forth.

43.      Upon information and belief, Defendant NPF, through its duly appointed Trustees, manages the pension fund as described in the CBA's.

44.      At no time has NPF or Local 28 taken steps to request that the automatic stay under Section 362 of the Code be lifted or modified.

45. 46. The refusal to cancel the Notices (Exhibits "1-"3") constitutes a willful violation of Section 362(a)(6) of the Code by seeking to recover pre-petition amounts due it from the Debtor.

46. Upon information and belief, in seeking to recover in full unpaid pre-petition contributions, Defendant NPF knowingly put inordinate pressure upon the Debtor to either pay up or lose its employees which, in turn, would serve to collapse Debtor's business. The Notice, therefore, posed an immediate and direct threat to Debtor's then existing business operations and the very existence of the Debtor.

47. Thereafter, and despite the Debtor's attempt to enter the NPF Internet Payment System, NPF has prevented OMC from making payment of post-petition obligations.

48. By virtue of the foregoing, Debtor demands that damages and sanctions be imposed against Defendant NPF and the remaining Defendant for their willful violation of Section 362(a)(6) of the Code in such sum as this Court may deem appropriate under the circumstances, as well as the imposition of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST**
**UNION AND TRUSTEES OF LOCAL 28 and NPF**
**FOR VIOLATION OF THE AUTOMATIC STAY**

49. Debtor repeats and realleges each allegation set forth in Paragraphs "1" through "45" with the same effect as if herein fully set forth.

50. Union and the Trustees of Local 28 Funds, including NPF, acting both severally and in concert through their common attorney and agent, in violation of Section 362(a)(6) of the Code, demanded that the Debtor make current all benefits due Debtor's employees regardless of whether such payments included unpaid, pre-petition obligations.

51. Upon information and belief, in seeking to recover pre-petition contributions,

Defendants Union and NPF put inordinate pressure upon the Debtor to either pay up or face a work stoppage, the effect of which would cause the collapse of Debtor's entire business.

52.     Despite assurances from the Debtor that all of Debtor's post petition obligations would be paid in full and thereafter kept current, Union and Local 1 Funds, through their mutual counsel, continued to insist that all outstanding benefit obligations, including pre-petition obligations, be paid in full before labor peace would be restored.

53. By virtue of the foregoing, Debtor demands that damages and sanctions be imposed against Defendants for their willful violation(s) of Section 362(a)(6) of the Code in such sum as this Court may deem appropriate under the circumstances, as well as the imposition of punitive damages.

**THIRD CLAIM FOR RELIEF AGAINST
UNION AND TRUSTEES OF LOCAL 28 and NPF
FOR DECLARATION THAT PENSION BENEFITS
<u>ARE NOT TERMINATED</u>**

54.     Debtor repeats and realleges each allegation set forth in Paragraphs "1" through "53" with the same effect as if herein fully set forth.

55. The Notice dated September 13, 2010 (Exhibit "1") states, in relevant part:

> Pursuant to Section 12 of the plan Document and Article Xli, Section 12 of the Trust Document, this is to serve as notice that the Trustees' of the Sheet Metal Workers National Pension Fund has terminated OMC's status as a Contributing Employer effective October 1, 2010. This action has been taken as O.M.C Inc. has failed to make contributions and submit reports as required by federal law.

56. Inasmuch as the Notice dated September 13, 2010 (Exhibit "1") speaks to an event that occurs in the future, and a post-petition dated, the Notice dated September 13, 2010 (Exhibit "1") is ineffective by its terms

57. By virtue of the foregoing, Debtor demands a declaration to the effect that the Notice

dated September 13, 2010 (Exhibit "1") was of no force and effect.

## FOURTH CLAIM FOR RELIEF AGAINST
## UNION FOR DISCRIMINATION AGAINST
## <u>DEBTOR' S EMPLOYEES AS BARRED BY 11 U.S.C. § 525(b)</u>

58. Debtor repeats and realleges each and every allegation set forth in Paragraphs "1"

through "59" with the same effect as if herein fully set forth.

59. 11 U.S.C. Section 525(b) states as follows:

> (b) No private employer may terminate the employment of, or discriminate
> with respect to the employment against, an individual who is or has been a
> debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an
> individual associated with such debtor or bankrupt, solely because such debtor
> or bankrupt—
>
> (1) is or has been a debtor under this title or a debtor or bankrupt under the
> Bankruptcy Act;
>
> (2) has been insolvent before the commencement of a case under the title
> during the case but before the grant  or denial of a discharge; or
>
> (3) has not paid a debt that is dischargeable in a case under this title or that
> was discharge under the Bankruptcy Act.

60. The Debtor's employees are "person's associated with such debtor" within the

meaning of 11 U.S.C. § 525(b).

61. Defendants, by terminating the Pension Credits, are discriminating against employees

of the Debtor.

62.  Defendants' termination of Pension Creditors to employees of Plaintiff violates 11

U.S.C. §525(b).

63. By virtue of the foregoing, Debtor demands that damages and sanctions be imposed

against Defendants for their willful violation(s) of Section 525(b) of the Code in such sum as this

Court may deem appropriate under the circumstances, as well as the imposition of punitive

damages.

## FIFTH CLAIM FOR RELIEF AGAINST
## <u>UNION UNDER 11 U.S.C. § 105</u>

64. Debtor repeats and realleges each and every allegation set forth in Paragraphs "1" through "63" with the same effect as if herein fully set forth.

65. The refusal to reverse the termination of the Pension Credits is an affront to the dignity of the Bankruptcy Court.

66. The ability of a Debtor to operate its business and, subject to compliance with post-petition obligations retain skilled and trained employees is highly central to the administration of bankruptcy cases.

67. 11 U.S.C. §105(a) states as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

68. The refusal to reverse the termination of the Pension Credits is an affront to the dignity of the Court's process and the integrity of the judicial process.

69. Any effort to chill or intimidate workers from providing services to the Debtor damages Plaintiffs by an amount that is impossible to ascertain.

70. Plaintiff has no adequate remedy at law.

71. Plaintiff is thus entitled to preliminary and permanent injunctive relief enjoining Defendant from continuing to refuse to reverse the termination of the Pension Credits.

**WHEREFORE**, Debtor prays for judgment against Defendants as provided in this Complaint, together with the costs and disbursements of this action and for such other and further relief which to this Court may seem proper.

Dated: Harrison, New York
      October 11, 2010

               RATTET, PASTERNAK & GORDON OLIVER, LLP
               Attorneys for the Debtor
               550 Mamaroneck Avenue
               Harrison, New York 10528
               (914) 381-7400
                   Dawn K. Arnold
               By: _/s/_____
                   Dawn K. Arnold

## **VERIFICATION**

### **VERIFICATION/DECLARATION UNDER PENALTY OF PERJURY BY MICHAEL CHECCI**

I Michael Checci, President of O.M.C. Inc, declare under penalty of Perjury that I have read the foregoing Verified Complaint and my attachments thereto and that they are true and correct to the best of my knowledge, information and belief except as to the matters therein stated to be alleged upon information and belief.

Michael Checci

/S/_____

MICHAEL CHECCI

Dated: October 11, 2010

**EXHIBIT "1"**



**Sheet Metal Workers
National Pension Fund**

601 N. Fairfax Street
Alexandria, VA 22314

PHONE:    703-739-7000
FAX:      703-683-0932
E-Mail:   Kcolombo@smwnpf.org

By overnight delivery and regular mail

September 13, 2010

O M C Inc.
4010 Park Avenue
Bronx, NY  10457-7318

RE:    Termination of Contributing Employer Status

Dear Employer:

Pursuant to Section 12 of the Plan Document and Article XII, Section 12 of the Trust Document, this is to serve as notice that the Trustees' of the Sheet Metal Workers National Pension Fund has terminated O M C Inc. status as a Contributing Employer effective October 1, 2010.  This action has been taken as O M C Inc.has failed to make contributions and submit reports as required by federal law.

Please be advised that although O M C Inc.status as a Contributing Employer is terminated effective October 1, 2010, the company remains liable for all contributions, interest, liquidated damages, attorneys and fees and costs for contributions due for hours worked through September 30 2010 and other monies due under federal law.  Note also that O M C Inc. termination is limited to the National Pension Fund.  O M C Inc. continues to be obligated to contribute to all other benefit plans and programs under its agreement with Sheet Metal Local Union 28 and all terms and conditions of the Local 28 Collective Bargaining Agreement otherwise continue in force and effect.

Any employee of O M C Inc. who works on or after October 1, will not accrue any benefits under the terms of the Plan Document.  You should also be made aware that as required by federal law the National Pension Fund will be sending the enclosed notice to all Plan Participants working in Sheet Metal Local Union 28's jurisdiction advising them of this decision.

As a result of the company's termination, O M C Inc. will be liable for a withdrawal liability.  A separate notice and demand will be sent to you shortly after October 1, 2010.

If you have any questions regarding this matter or wish to pay the entire outstanding amount due, please have your attorney contact Jeffrey Dubin, Esq., at (631) 351-0300.

Respectfully,

Kenneth Colombo
Fund Coordinator

cc: Local Union 28
    Jeffrey Dubin

**EXHIBIT "2"**

## NOTICE OF TERMINATION OF THE FOLLOWING COMPANIES AS NPF CONTRIBUTING EMPLOYERS EFFECTIVE OCTOBER 1, 2010:

**All-Pro Sheet Metal Co., Gillis Sheet Metal, Inc., OMC, Inc.,**
**Mustang Sheet Metal, Air Comfort Engineering Co., and Desert Refrigeration & Heating**

ANY WORK PERFORMED AFTER SEPTEMBER 30, 2010 FOR THOSE LISTED EMPLOYERS WILL NOT BE TREATED AS WORK IN "COVERED EMPLOYMENT" UNDER THE NPF. YOU WILL NOT EARN ANY PENSION BENEFITS OR CREDITED SERVICE OF ANY KIND FROM THE NPF FOR ANY WORK YOU PERFORM FOR THOSE EMPLOYERS AFTER SEPTEMBER 30, 2010. NOTE: You will continue to earn pension benefits and credited service from the NPF if you work in Covered Employment for NPF Contributing Employers in good standing under your respective Collective Bargaining Agreement(s) with Sheet Metal Workers' Local Union No. 2, 17, 28, 67, 214 and 359.

September 13, 2010

To:   All Employees working under Collective Bargaining Agreement(s) within the jurisdiction of Sheet Metal Workers' Local Union No. 2,
28, 67, 214 and 359.

Dear Sir or Madam:

This Notice is sent to you in accordance with Section 200(h) of the Employee Retirement Income Security Act of 1974 ("ERISA"). It relates solely to the impact of possible future employment and/or continued employment with the following Employer(s), hereafter referred to as "Terminated Employers" on or after October 1, 2010.

| | | |
|---|---|---|
| All-Pro Sheet Metal Co. | Lees Summit, MO | party to agreement with Local Union 2 |
| Gillis Sheet Metal Inc. aka Holyoke Enterprises | Lakeville, MA | party to agreement with Local Union 17 |
| OMC, Inc. | Bronx NY | party to agreement with Local Union 28 |
| Mustang Sheet Metal | San Antonio, TX | party to agreement with Local Union 67 |
| Air Comfort Engineering Co. | Meridian, MS | party to agreement with Local Union 214 |
| Desert Refrigeration & Heating | Phoenix, AZ | party to agreement with Local Union 359 |

The Terminated Employers listed above have been Contributing Employers to the Sheet Metal Workers' National Pension Fund ("Fund" or "NPF") under a Collective Bargaining Agreement ("CBA") with Sheet Metal Workers' Local Unions identified above. These Terminated Employers have chronically not paid monthly contributions to the NPF as required by the CBA and the NPF's plan documents. Despite forceful collection efforts these contribution delinquencies remain unresolved. Therefore, the NPF Trustees have terminated the "Contributing Employer" status of the employers listed above effective October 1, 2010. If any Participant returns to work for any of those Terminated Employers after September 30, 2010 he/she will NOT earn any additional benefits from the NPF for that work, and he/she will NOT be credited with any type of service under the NPF for that work, including but not limited to Future Service Credit and Hours of Work in Covered Employment (relevant to earned service and other eligibility requirements). Please note this failure could adversely affect your eligibility for any form of early retirement pension and your ability to satisfy any minimum hour requirements imposed by the NPF. It is important that you understand this. We have included below some examples of how such work could affect your future benefit eligibility and the amount of your future benefits from the NPF.

**GENERAL EXAMPLE,** *specific information for each Local follows this example:*

Suppose Joe works a total of 1,680 hours in 2010 under the Collective Bargaining Agreement (an average of 140 hours per month). Under the terms of the current CBA, his Employer is obligated to increase the hourly Contribution Rate from $2.00 per hour to $2.14 effective August 1, 2010. In this example, let's say that he works 980 hours in Covered Employment from January through July and 700 hours from August through December. In this example, Joe's Normal Retirement Pension benefit would be determined as follows:

| | | | |
|---|---|---|---|
| STEP 1 | 700 Hours x $2.14 * | = | $1,498.00 |
| STEP 2 | 500 Hours x $2.00 | = | $1,000.00 |
| STEP 3 | 1.5% of steps 1 and 2 | = $ | 37.47 |
| STEP 4 | 480 Hours x $2.00 | = $ | 960.00 |
| STEP 5 | 0.7% of step 4 | = $ | 6.72 |
| STEP 6 | Sum of Steps 3 and 5 | = $ | 44.19 |
| STEP 7 | 70% of Step 6 (for 55/30 Locals) | = $ | 30.93 |

* For purposes of calculating your Normal Retirement Pension benefit for 2010, the Plan uses the maximum number of Contribution Hours (up to 1,200) of the $2.14 Contribution Rate in Step 1 as this provides for a better benefit. It should also be noted that the benefit is based on 70% of the total contributions, as shown in STEP 7, If the CBA participates in the 55/30 Pension, which, if certain service requirements are met, eliminates early retirement age reductions for qualified Participants.

Below please find information about how your Normal Retirement Pension benefit is determined in each respective Local Union based on the hours used to calculate Joe's Normal Retirement Pension benefit in the foregoing example above.

| Local Union(s) | Normal Retirement Pension benefit for 2010 |
|---|---|
| Local Union 002 | **$133.00 |
| Local Union 017 | **$126.20 |
| Local Union 028 | **$149.58 |
| Local Union 067 | **$ 82.56 |
| Local Union 214 | $ 76.43 |
| Local Union 359 | $ 39.60 |

** Note – For Locals 2, 17, 28, and 67, this Normal Retirement Pension benefit reflects 70% as described in STEP 7 above as these CBA's participate in the 55/30 Pension. Both the Local 214 CBA for Air Comfort and the Local Union 359 CBA for Desert Refrigeration & Heating does not provide for the 55/30 Pension.

However, suppose you work for the Terminated Employers described in this Notice after September 30, 2010. As the NPF terminated their participation as of October 1, 2010, they are no longer Contributing Employers and any work for those Terminated Employers will NOT be considered work in Covered Employment. Therefore, the work you perform for those Terminated Employers on or after that date will NOT increase your Normal Retirement Pension benefit, and it will NOT result in credited service (such as the Service Credit[1]) or help avoid a Break in Service if you do not have enough hours of Work in Covered Employment (435 Hours) during the calendar year in which you work for any of the Terminated Employers.

Again, please be advised that any pension credit toward a Normal Retirement Pension benefit you earn as a result of your work for any Terminated Employers before October 1, 2010 will not be reduced as a result of the termination of their "Contributing Employer" status. Your Normal Retirement Pension benefit is your monthly benefit payable at age 65 under the current Plan. If however you go to work, or continue to work, for any of the Terminated Employers after September 30, 2010, your work will not result in any additional NPF pension benefits for you. Note that eligibility for all forms of early retirement pension benefits requires that you meet certain age, service and activity requirements – meaning that you have to reach a certain age and have worked certain hours prior to retirement to be eligible for certain benefit options.

If you are not employed by any of the Terminated Employers any employment with the Terminated Employers described in this Notice after September 30, 2010, you will not be affected by the termination of their Contributing Employer status. PLEASE NOTE: Should you work for any other Contributing Employers that make Contributions to the NPF in accordance with the Building Trades CBA, you will continue to receive benefits for all Contribution Hours with that Employer consistent with the Plan and continue to earn both pension benefits and credited service under the NPF.

Additionally, Employees who continue to work for the Terminated Employers may be subject to additional benefit adjustments described in the NPF's Rehabilitation Plan. Specifically, the category of persons "for whom contributions are not required to be made" which makes more significant benefit reductions for this category that includes, for Participants covered under the Alternative Schedule. These reductions include, but are not limited to, the elimination of the pop-up feature, all joint and survivor options, in addition to the elimination of all early retirement pensions. Finally, you should also be made aware, that the NPF also offers a $31.00/ per month 401h Medicare supplemental premium benefit to eligible Pensioners and his or her eligible spouse. Note that the Plan limits this benefit to persons who have 3,500 Hours of Work in Covered Employment within five (5) calendar years of retirement and whose former Employers are contributing at required Contribution Rates. We regret the circumstances causing this notice. Should you have questions, please contact the Fund Office.

cc:   Sheet Metal Workers' Local Union No Local Union No. 2, 17, 28, 67, 214 and 359.
      NPF Contributing Employers
      Terminated Employers
      SMACNA/Contractors' Associations

[1] It should be noted that a Participant must earn a minimum of 30 years (360 months) of Future Service Credit in order to qualify for a 55/30 Pension.

**EXHIBIT "3"**

September 29, 2010

Michael Belluzzi

BM SMWIA LU 28

500 Greenwich St

New York NY 10013

SUBJECT: OMC SHEET METAL

Dear Sir and Brother:

As you are aware LU 28 members working for OMC have been sent letters from the NPF that they will no longer be covered by the NPF after September 30th.

We both have close ties to OMC employees and have both received many calls from the members working for OMC, we request the following information in writing from you.

1 Are members of local 28 permitted to work for OMC on October 1, 2010.

2 If so will they be covered by the NPF for the hours worked.

3 If not what penalties will they incur if they do continue to work for OMC.

As you should imagine rumors are flying about the amount of monies owed to the NPF over $800,000, and over one million dollars to the local 28 funds. If these rumors are true the members should be made aware of their obligations.

Please respond in writing to both of us and copy all local 28 Officers, as soon as possible to this e-mail so we may inform the members of their obligations and choices.

Fraternally yours

Ray Mineri

Ralph Tortora

Cc: James Cuiffo

   Local 28

EXHIBIT "4"

550 *Mamaroneck Avenue*
*Harrison, New York 10528*
*(914) 381-7400*
*Fax: (914) 381-7406*
*www.rattetlaw.com*

NY OFFICE

295 *Madison Avenue, 19th Floor*
*New York, New York 10017*
*(212) 677-6900*

PLEASE REPLY TO HARRISON OFFICE

September 30, 2010

**VIA E-MAIL TO DubinJS@cs.com**

Jeff Dubin, Esq.
Law Office of Jeffrey S. Dubin
464 New York Avenue - Suite 100
Huntington, New York 11743

   **Re: OMC, Inc., Chapter 11**
      **S.D.N.Y. Case No. 10-14864-(mg)**

Dear Mr. Dubin:

   This firm represents OMC, Inc. (the "Debtor") in the above referenced Chapter 11 proceedings.

   On September 15, 2010 a Chapter 11 Bankruptcy proceeding was filed by this office on behalf of OMC, Inc. ("Debtor") in the United States Bankruptcy Court for the Southern District of New York under Case No.10-46608 (MG).

   Pursuant to Bankruptcy Code §362(a) the filing of a petition under Chapter 11 acts as an automatic stay of, inter alia, any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

   We are advised that your client, Sheet Metal Workers International Association has made certain threats and/or statements which may directly or indirectly influence or cause a work stoppage at our client. Under Chapter 11, such a work stoppage is subject to the automatic stay, the violation of which can lead the Bankruptcy Court to assess damages. See, e.g. In re A.C.E. Elevator Co., Inc. 2009 WL 3255381 (Bkrtcy.S.D.N.Y.,2009) wherein the Court stated:

As noted, the reach of the Norris-LaGuardia Act to preclude a federal court's issuance of an injunction of a strike applies even to so-called illegal strikes or improper strikes. It does not, however, leave employers without a remedy for illegal or improper strikes-for example, a monetary remedy in the form of damages. See *Elsinore Shore Associates v. Local 54, Hotel Employees & Restaurant Employees International Union*, 820 F.2d 62, 69 (3d Cir.1987). As is made clear in the case law, **such damages have been awarded in other, analogous contexts in the past.** *Id*. See also *In re A & C Electric Company, Inc.* 188 B.R. 975 (Bankr.N.D.Ill.1995), *aff'd* 193 B.R. 856 (N.D.Ill.1996), which, although it does not discuss the Norris-LaGuardia Act directly, is consistent with the foregoing view, citing cases interpreting the Norris-Laguardia Act, including the *Crowe Associates* case and *Petrusch*. In *A & C Electric*, the debtor did not seek an injunction of an improper or unlawful strike in violation of the automatic stay but, instead, **sought damages for such a strike, and the court concluded, as affirmed by the District Court, that such damages would lie.**

The damages for such a breach of the automatic stay, here, under the Second Circuit's *Chateaugay* case, would not be under section 362(h), which the union correctly notes applies only to individuals, but *would*, instead, arise under the Court's general contempt power to punish violations of the automatic stay. *Maritime Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-187 (2nd Cir.1990). **As the case law cited by *Chateaugay* makes clear, when it comes to violations of the automatic stay and sanctions therefor, the necessary level of willfulness is not particularly high, moreover. In this context, it merely must be shown that the alleged violator had knowledge of the bankruptcy case and the existence of the automatic stay, and I believe that under this record that knowledge on the union's part is clear, particularly after the Court warned the union's counsel of that risk.**

In re A.C.E. Elevator Co., Inc. 2009 WL 3255381, 6 (Bkrtcy. S.D.N.Y.,2009) (emphasis supplied).

*Rattet, Pasternak & Gordon-Oliver, LLP*

Accordingly, your client's actions to date constitute a violation of automatic stay under the relevant case law. Demand is therefore made that your client immediately cease and desist from making any further threats or statements with regards to the Debtor's union employees. Please be further advised that in the event that the Debtor's union employees walk off *any* of the Debtor's jobs, whether individually or collectively, the Debtor intends to hold your client liable for any and all damages resulting from any work stoppage or damage to my client's ongoing business and intends to immediately file an adversary proceeding in the Bankruptcy Court to seek and enforce any and all such claims and damages.

I trust your client will be guided accordingly.

Very truly yours,

James B. Glucksman

JSP/jbg
cc: Jonathan S. Pasternak
    Mr. Michael Checchi

**EXHIBIT "5"**

## Jonathan Pasternak

| | |
|---|---|
| **From:** | Jeff Dubin [dubinjs@cs.com] |
| **Sent:** | Thursday, September 30, 2010 7:32 PM |
| **To:** | Jonathan Pasternak |
| **Subject:** | OMC, Inc. |

Jon,

I have received the cases you believe support your position. I think some facts would be helpful. The Sheet Metal Workers' National Pension Fund (SMWNPF) is an unincorporated trust, subject to the Taft-Hartley Act, 29 U.S.C. Section 186(c), and ERISA, 29 U.S.C. Section 1001 *et seq.* It is a separate legal entity from Local Union 28 of the Sheet Metal Workers' International Union (Local 28). It is a separate legal entity from the Sheet Metal Workers' International Union, AFL-CIO (International Union). Ken Colombo is an employee of the SMWNPF. He is not an employee or agent of Local 28 or the International Union. Business Agents of Local 28 are not employees or agents of the SMWNPF. They are not authorized to make statements binding on the SMNWPF. The SMWNPF has not taken any steps that would clothe any business agents with apparent authority.

Your cases are not on point. In fact, they are not relevant. *In re A.C.E. Elevator Co., Inc.* 2009 WL 3255381 (Bankr. SDNY 2009), and *Elsinore Shore Associates v. Local 54, Hotel Employees,* 820 F.2d 62 (3rd Cir. 1987), both involve a union work stoppage. The SMWNPF is not a union. It has no authority to order a work stoppage. It has not urged or authorized anyone to urge a work stoppage.

*In re A & C Electric Company, Inc.*, 188 B.R. 975 (Bankr. ND Ill 1995, aff'd. 193 B.R. 856 (ND Ill 1996), does involve an employee benefit fund. However, the benefit fund in that case was clearly seeking the collection of pre-petition debts. The benefit fund also actively urged the debtor's employees not to work. The SMWNPF has not done either of these actions. The SMWNPF has done nothing that affects the pre-petition debts of OMC.

*Maritime Asbestos Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.),* 920 F.2d 183 (2nd Cir. 1990), involves an interpretation of who may seek damages for a violation of the automatic stay. The case does not decide any issues as to what constitutes a violation of the automatic stay.

You take the position that the termination of the participation of an employer "would be viewed by the Bankruptcy Court as taking action with respect to pre-petition claims owed ... by OMC." The ONLY consequences caused directly by the SMWNPF's termination of a Contributing Employer is that:

(1) the employees who continue to work for those terminated employers stop earning pension credit because it is no longer Covered Employment,

(2) the employer ceases to have an obligation to contribute to the Plan after the effective date of the termination.

Termination has no impact on contributions that were due and owning before the termination of a Contributing Employer. It operates to prevent the accumulation of future contribution obligations. The SMWNPF's termination of a Contributing Employer does NOT have any effect on the union membership or job status of the employees covered by the collective bargaining agreement between Local 28 and an employer. Termination only effects whether the employees receive **future** pension credit from the SMWNPF. The SMWNPF has not and may not cancel past pension credit due to the employer's failure to make contributions in the past.

OMC was one of several employers that were terminated from participation in the SMWNPF because these employers have been habitually delinquent in remitting contributions.   The action is taken under the terms of the Plan Document and the Agreement and Declaration of Trust. The action is taken in order to prevent the accumulation of potentially unrecoverable receivables.   In the absence of those Employers' termination from the SMWNPF, contributions would continue to accumulate along with potentially unfunded pension credits in the future.   To prevent this, the SMWNPF has a provision enabling the termination of such Contributing Employers so that additional pension credit is not earned by any of those Employers' employees, which of course would have continued to result in the accumulation of unfunded liabilities as a result of the non-payment of contributions. It is unlikely that a Court of Equity would find this action to be inequitable.

The public policy of the United States, as expressed in ERISA, strongly favors maintaining the financial viability of pension funds such as the SMWNPF. Both 29 U.S.C. Section 1132 and 29 U.S.C. Section 1145 reflect that concern. They offer strong tools to funds in collecting their contributions. These tools are not available to most plaintiff creditors. The Second Circuit has concluded that Congress placed such pension plans, the third party beneficiaries of collective bargaining agreements, in a position superior to that of the original promisee, analogous to that of a holder in due course, see *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2nd Cir. 1990), cert. den. 498 U.S. 982 (1990), 111 S.Ct. 511, 112 L.Ed.2d 524.

"This standard reflects the 'most important purpose' of ERISA, which is 'to assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society.' S.Rep. No. 93-127 (1973), reprinted in 1974 U.S.C.C.A.N. 4838, 4849." *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 215 (2nd Cir. 2006).

**Your position as expressed in James B. Glucksman's letter is flawed. Litigation against the SMWNPF based on that position would border on the frivolous.**

Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

CIRCULAR 230 NOTICE:  Any advice contained in this communication (including any attachments) related to a Federal tax issue is not intended or written to be used, and cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  The foregoing statement is provided in accordance with Circular 230, 31 C.F.R. Part 10.

NOTICE:  This E-mail message contains privileged and confidential information intended only for the use of the individual or entity name above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail, or by calling the sender at 631.351.0300.  Thank you.

**EXHIBIT "6"**

# Jonathan Pasternak

**From:** Jonathan Pasternak

**Sent:** Tuesday, October 05, 2010 2:39 PM

**To:** 'Jeff Dubin'

**Cc:** James Glucksman; Dawn Arnold; Jared Ullman

**Subject:** OMC, Inc.

In response to your last email to me dated September 30, 2010, and in furtherance of our telephone conversation of today, I remain of the strong conviction that the recent actions taken by the National Pension Fund ("NPF") attempting to terminate OMC's future participation in the NPF both constitute a violation of the automatic stay and further constitute discriminatory practice prohibited by Section 525(b) of the Bankruptcy Code in that they directly relate to the history and fact of non-payment by OMC, Inc. of pre-petition obligations owed to NPF. Accordingly, we intend to bring suit and declaratory and injunctive relief in the Bankruptcy Court enjoining and/or prohibiting the NPF from terminating OMC's participation in NPF and resulting damages therefrom. Notwithstanding, OMC, Inc. would be willing to agree to a "standstill" type of arrangement with  NPF, in lieu of commencement of such litigation, as follows:

1) OMC will make weekly remittance of post-petition NPF obligations, commencing retroactively to September 15th, the Chapter 11 commencement date, and will continue to make such weekly remittances on a timely basis during the pendency of the Chapter 11 case. Procedurally, OMC will therefore require access to weekly remittance reports from NPF (as opposed to the currently monthly reporting). I understand the contact for such reports is John Holback at NPF. His direct telephone number is 800-231-4622 ext. 7008.

2) NPF will immediately rescind the termination of OMC's participation, retroactive to September 15, 2010,  and will cause the delivery of a letter to both OMC and Local 28 to such effect.

3) NPF will take no further action during the course of the Chapter 11 case to terminate OMC's participation in NPF strictly provided that OMC remains 100% current in all weekly post-petition remittance of NPF contributions.

4) Both parties reserve any and all rights with respect to their respective positions of the authority or validity of the termination by NPF and any and all claims related thereto, including but not limited to the pre-petition claims of NPF in the Chapter 11 case.

5) In the event that OMC defaults on any of its post-petition NPF contribution obligations, NPF shall have the right to terminate this standstill agreement upon five (5) business days' notice to the undersigned counsel.

Please immediately review the foregoing proposal with your client, in that, absent an immediate resolution, the Debtor continues to suffer irreparable harm and will need to immediately commence legal proceedings in the Bankruptcy Court as outlined above.

I look forward to your soonest response. Thank you for your promptest attention to this urgent matter.

Sincerely,

Jonathan S. Pasternak, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, NY 10528
Tel.: (914) 381-7400
Fax: (914) 381-7406

*********************************************************************************

This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

**EXHIBIT "7"**

# Dawn Arnold

**From:** Jeff Dubin [dubinjs@cs.com]
**Sent:** Wednesday, 06 October, 2010 2:26 PM
**To:** Dawn Arnold
**Subject:** Re: OMC, Inc.

I just got in after a rather tough day in the EDNY. I just looked at the proposal. My suggestion this morning was to send me a proposal that I could take to my client. Instead, I get threats. My polite response to threats is "go do whatever you like."

Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

CIRCULAR 230 NOTICE:  Any advice contained in this communication (including any attachments) related to a Federal tax issue is not intended or written to be used, and cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  The foregoing statement is provided in accordance with Circular 230, 31 C.F.R. Part 10.

NOTICE:  This E-mail message contains privileged and confidential information intended only for the use of the individual or entity name above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail, or by calling the sender at 631.351.0300.  Thank you.

-----Original Message-----
From: Dawn Arnold <darnold@rattetlaw.com>
To: Jeff Dubin <dubinjs@cs.com>
Cc: James Glucksman <jglucksman@rattetlaw.com>; Jared Ullman <jullman@rattetlaw.com>; Jonathan Pasternak <jpasternak@rattetlaw.com>
Sent: Wed, Oct 6, 2010 1:02 pm
Subject: RE: OMC, Inc.

Jeff -  Were you able to speak to your client?

Dawn Kirby Arnold, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The

information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

**From:** Jonathan Pasternak
**Sent:** Tuesday, 05 October, 2010 2:39 PM
**To:** 'Jeff Dubin'
**Cc:** James Glucksman; Dawn Arnold; Jared Ullman
**Subject:** OMC, Inc.

In response to your last email to me dated September 30, 2010, and in furtherance of our telephone conversation of today, I remain of the strong conviction that the recent actions taken by the National Pension Fund ("NPF") attempting to terminate OMC's future participation in the NPF both constitute a violation of the automatic stay and further constitute discriminatory practice prohibited by Section 525(b) of the Bankruptcy Code in that they directly relate to the history and fact of non-payment by OMC, Inc. of pre-petition obligations owed to NPF. Accordingly, we intend to bring suit and declaratory and injunctive relief in the Bankruptcy Court enjoining and/or prohibiting the NPF from terminating OMC's participation in NPF and resulting damages therefrom. Notwithstanding, OMC, Inc. would be willing to agree to a "standstill" type of arrangement with NPF, in lieu of commencement of such litigation, as follows:

1) OMC will make weekly remittance of post-petition NPF obligations, commencing retroactively to September 15th, the Chapter 11 commencement date, and will continue to make such weekly remittances on a timely basis during the pendency of the Chapter 11 case. Procedurally, OMC will therefore require access to weekly remittance reports from NPF (as opposed to the currently monthly reporting). I understand the contact for such reports is John Holback at NPF. His direct telephone number is 800-231-4622 ext. 7008.

2) NPF will immediately rescind the termination of OMC's participation, retroactive to September 15, 2010, and will cause the delivery of a letter to both OMC and Local 28 to such effect.

3) NPF will take no further action during the course of the Chapter 11 case to terminate OMC's participation in NPF strictly provided that OMC remains 100% current in all weekly post-petition remittance of NPF contributions.

4) Both parties reserve any and all rights with respect to their respective positions of the authority or validity of the termination by NPF and any and all claims related thereto, including but not limited to the pre-petition claims of NPF in the Chapter 11 case.

5) In the event that OMC defaults on any of its post-petition NPF contribution obligations, NPF shall have the right to terminate this standstill agreement upon five (5) business days' notice to the undersigned counsel.

Please immediately review the foregoing proposal with your client, in that, absent an immediate resolution, the Debtor continues to suffer irreparable harm and will need to immediately commence legal proceedings in the Bankruptcy Court as outlined above.

I look forward to your soonest response. Thank you for your promptest attention to this urgent matter.

Sincerely,
Jonathan S. Pasternak, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, NY 10528
Tel.: (914) 381-7400
Fax: (914) 381-7406
*********************************************************************************
This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the

intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

**EXHIBIT "8"**

## Jonathan Pasternak

| | |
|---|---|
| **From:** | Dawn Arnold |
| **Sent:** | Wednesday, October 06, 2010 2:57 PM |
| **To:** | 'Jeff Dubin' |
| **Cc:** | Jonathan Pasternak |
| **Subject:** | RE: OMC, Inc. |

Jeff -

I think there is a miscommunication.  We meant to be productive and helpful to you in drafting something you can present to your client.  I just tried to give you a call to clear this up.  Please give me a call back, I'm sure we can resolve this very easily.  As sometimes happens, email can be read one way when intended an entirely different way.  There was no intent to be offensive, I assure you.  I look forward to speaking with you.

Dawn

Dawn Kirby Arnold, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

**From:** Jeff Dubin [mailto:dubinjs@cs.com]
**Sent:** Wednesday, 06 October, 2010 2:26 PM
**To:** Dawn Arnold
**Subject:** Re: OMC, Inc.

I just got in after a rather tough day in the EDNY. I just looked at the proposal. My suggestion this morning was to send me a proposal that I could take to my client. Instead, I get threats. My polite response to threats is "go do whatever you like."

Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

10/11/2010

CIRCULAR 230 NOTICE: Any advice contained in this communication (including any attachments) related to a Federal tax issue is not intended or written to be used, and cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein. The foregoing statement is provided in accordance with Circular 230, 31 C.F.R. Part 10.

NOTICE: This E-mail message contains privileged and confidential information intended only for the use of the individual or entity name above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, or by calling the sender at 631.351.0300. Thank you.

-----Original Message-----
From: Dawn Arnold <darnold@rattetlaw.com>
To: Jeff Dubin <dubinjs@cs.com>
Cc: James Glucksman <jglucksman@rattetlaw.com>; Jared Ullman <jullman@rattetlaw.com>; Jonathan Pasternak <jpasternak@rattetlaw.com>
Sent: Wed, Oct 6, 2010 1:02 pm
Subject: RE: OMC, Inc.

Jeff - Were you able to speak to your client?

Dawn Kirby Arnold, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

**From:** Jonathan Pasternak
**Sent:** Tuesday, 05 October, 2010 2:39 PM
**To:** 'Jeff Dubin'
**Cc:** James Glucksman; Dawn Arnold; Jared Ullman
**Subject:** OMC, Inc.

In response to your last email to me dated September 30, 2010, and in furtherance of our telephone conversation of today, I remain of the strong conviction that the recent actions taken by the National Pension Fund ("NPF") attempting to terminate OMC's future participation in the NPF both constitute a violation of the automatic stay and further constitute discriminatory practice prohibited by Section 525(b) of the Bankruptcy Code in that they directly relate to the history and fact of non-payment by OMC, Inc. of pre-petition obligations owed to NPF. Accordingly, we intend to bring suit and declaratory and injunctive relief in the Bankruptcy Court enjoining and/or prohibiting the NPF from terminating OMC's participation in NPF and resulting damages therefrom. Notwithstanding, OMC, Inc. would be willing to agree to a "standstill" type of arrangement with NPF, in lieu of commencement of such litigation, as follows:

1) OMC will make weekly remittance of post-petition NPF obligations, commencing retroactively to September 15th, the Chapter 11 commencement date, and will continue to make such weekly remittances on a timely basis during the pendency of the Chapter 11 case. Procedurally, OMC will therefore require access to weekly remittance reports from NPF (as opposed to the currently monthly reporting). I understand the contact for such

reports is John Holback at NPF. His direct telephone number is 800-231-4622 ext. 7008.

2) NPF will immediately rescind the termination of OMC's participation, retroactive to September 15, 2010, and will cause the delivery of a letter to both OMC and Local 28 to such effect.

3) NPF will take no further action during the course of the Chapter 11 case to terminate OMC's participation in NPF strictly provided that OMC remains 100% current in all weekly post-petition remittance of NPF contributions.

4) Both parties reserve any and all rights with respect to their respective positions of the authority or validity of the termination by NPF and any and all claims related thereto, including but not limited to the pre-petition claims of NPF in the Chapter 11 case.

5) In the event that OMC defaults on any of its post-petition NPF contribution obligations, NPF shall have the right to terminate this standstill agreement upon five (5) business days' notice to the undersigned counsel.

Please immediately review the foregoing proposal with your client, in that, absent an immediate resolution, the Debtor continues to suffer irreparable harm and will need to immediately commence legal proceedings in the Bankruptcy Court as outlined above.

I look forward to your soonest response. Thank you for your promptest attention to this urgent matter.

Sincerely,
Jonathan S. Pasternak, Esq.
Rattet, Pasternak & Gordon-Oliver, LLP
550 Mamaroneck Avenue
Harrison, NY 10528
Tel.: (914) 381-7400
Fax: (914) 381-7406
***********************************************************************************
This message originates from the Law Firm of Rattet, Pasternak & Gordon-Oliver, LLP. The message and any file transmitted with it contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based upon a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Rattet, Pasternak & Gordon-Oliver, LLP.

10/11/2010

**EXHIBIT "9"**

**Jonathan Pasternak**

| | |
|---|---|
| **From:** | Jeff Dubin [dubinjs@cs.com] |
| **Sent:** | Wednesday, October 06, 2010 7:32 PM |
| **To:** | Jonathan Pasternak |
| **Subject:** | SMWNPF & OMC |

Dear Mr. Pasternak,

I have sent your "stand still" proposal to the Fund Office. Since Termination is a Trustee directed policy, the Trustees must be contacted. This takes time. I'll let you know when I have useful information.

Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

CIRCULAR 230 NOTICE: Any advice contained in this communication (including any attachments) related to a Federal tax issue is not intended or written to be used, and cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein. The foregoing statement is provided in accordance with Circular 230, 31 C.F.R. Part 10.

NOTICE: This E-mail message contains privileged and confidential information intended only for the use of the individual or entity name above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, or by calling the sender at 631.351.0300. Thank you.

**EXHIBIT "10"**

**Jonathan Pasternak**

**From:**      Jonathan Pasternak
**Sent:**      Wednesday, October 06, 2010 9:39 PM
**To:**        'mche733203@nextel.blackberry.net'
**Subject:**   Fw: SMWNPF & OMC

FYI

----- Original Message -----
From: Jonathan Pasternak
To: 'dubinjs@cs.com' <dubinjs@cs.com>
Cc: James Glucksman; Dawn Arnold
Sent: Wed Oct 06 21:38:53 2010
Subject: Re: SMWNPF & OMC

Unfortunately, we don't have much time to resolve this. My client has just lost 2 jobs
totaling $2million over concerns of his ability to adequately man jobs. I strongly urge
your client to give us a response by tomorrow. Thank you.

----- Original Message -----
From: Jeff Dubin <dubinjs@cs.com>
To: Jonathan Pasternak
Sent: Wed Oct 06 19:31:56 2010
Subject: SMWNPF & OMC

Dear Mr. Pasternak,

I have sent your "stand still" proposal to the Fund Office. Since Termination is a Trustee
directed policy, the Trustees must be contacted. This takes time. I'll let you know when I
have useful information.


Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

CIRCULAR 230 NOTICE:  Any advice contained in this communication (including any
attachments) related to a Federal tax issue is not intended or written to be used, and
cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code
or (2) promoting, marketing, or recommending to another party any transaction or matter
addressed herein.  The foregoing statement is provided in accordance with Circular 230, 31
C.F.R. Part 10.

NOTICE:  This E-mail message contains privileged and confidential information intended
only for the use of the individual or entity name above.  If the reader of this message is
not the intended recipient, you are hereby notified that any dissemination, distribution
or copying of this communication is strictly prohibited.  If you have received this
communication in error, please immediately notify us by return e-mail, or by calling the
sender at 631.351.0300.  Thank you.

**EXHIBIT "11"**

## Jonathan Pasternak

**From:**   dubinjs@cs.com

**Sent:**   Thursday, October 07, 2010 7:11 AM

**To:**     Jonathan Pasternak

**Subject:** Re: SMWNPF & OMC

In that case I suggest that you spend the weekend drafting your frivolous adversary proceeding. You were given an opportunity to demonstrate that our position was incorrect. Instead, you demonstrated that you will take a position that is based on nothing other than the needs of your client.

Sent via BlackBerry by AT&T

---

**From:** "Jonathan Pasternak" <jpasternak@rattetlaw.com>
**Date:** Wed, 6 Oct 2010 21:38:53 -0400
**To:** <dubinjs@cs.com>
**Cc:** James Glucksman<jglucksman@rattetlaw.com>; Dawn Arnold<darnold@rattetlaw.com>
**Subject:** Re: SMWNPF & OMC

Unfortunately, we don't have much time to resolve this. My client has just lost 2 jobs totaling $2million over concerns of his ability to adequately man jobs. I strongly urge your client to give us a response by tomorrow. Thank you.

----- Original Message -----
From: Jeff Dubin <dubinjs@cs.com>
To: Jonathan Pasternak
Sent: Wed Oct 06 19:31:56 2010
Subject: SMWNPF & OMC

Dear Mr. Pasternak,

I have sent your "stand still" proposal to the Fund Office. Since Termination is a Trustee directed policy, the Trustees must be contacted. This takes time. I'll let you know when I have useful information.

Jeff Dubin
Law Office of Jeffrey S. Dubin
464 New York Avenue
Suite 100
Huntington, New York 11743
631.351.0300
631.351.1900 FAX
DubinJS@cs.com

CIRCULAR 230 NOTICE:  Any advice contained in this communication (including any attachments) related to a Federal tax issue is not intended or written to be used, and cannot be used, for the purposes of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  The foregoing statement is provided in accordance with Circular 230, 31 C.F.R. Part 10.

NOTICE:  This E-mail message contains privileged and confidential information intended only for the use of the individual or entity name above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by return e-mail, or by calling the sender at 631.351.0300.  Thank you.